| | |
|---|---|
| KASHIEF WHITE,<br><br>        Plaintiff,<br><br>   v.<br><br>ERIC TAYLOR, et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 10-5485 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

Mr. Kashief White
654775/ SBI 739645-C
Bayside State Prison
4923 Route 47
P.O. Box F-1
Leesburg, NJ 08327
    Plaintiff Pro Se

Matthew J. Behr, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
    Attorney for Defendants Aramark, Inc., Aramark
    Correctional Services, LLC, and Dietician Carey

Anne E. Walters, Esq.
Office of County Counsel
Courthouse, 14th Floor
520 Market Street
Camden, NJ 08102
    Attorney for Defendants Warden Eric Taylor, Deputy
    Warden Christopher Fossler, Deputy Warden Anthony
    Pizzaro, Rodney Greco, Camden County and Camden County
    Freeholders

**SIMANDLE**, Chief Judge:

**I.   INTRODUCTION**

This matter is before the Court on Plaintiff's motion to file an amended complaint against Defendants Aramark, Inc. ("Aramark"), Aramark Correctional Services LLC ("ACS"), and ACS's Dietician Carey (collectively, "Aramark Defendants"). [Docket Item 44.] This action concerns meals that the Aramark Defendants served to Plaintiff while he was a pretrial detainee at the Camden County Correctional Facility ("CCCF") in Camden, N.J., from 2008 to 2010. Plaintiff alleges that the Aramark Defendants served meals in an unsanitary fashion and failed to provide him with an adequate diet, thereby violating his Due Process rights under the Fourteenth Amendment. Plaintiff also contends that the Aramark Defendants conspired to deprive him of his nutritional requirements, leaving him and other inmates no other option but to shop at the jail's commissary to fulfill their dietary needs. Plaintiff files suit under 42 U.S.C. § 1983.

Also included in Plaintiff's Proposed Amended Complaint are new claims against Camden County and County officials ("County Defendants") for civil conspiracy and failing to provide Plaintiff with safe and healthy prison conditions pursuant to the Fourteenth Amendment. Although the Court only granted Plaintiff permission to amend claims against the Aramark Defendants, the County has filed

opposition responding to the substance of Plaintiff's argument. [Docket Item 45.] Because the Court must treat pleadings from pro se litigants liberally, Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011), the Court will construe this pleading as a motion to amend against Camden County and will address the merits of this claim.

For the reasons explained below, the Court will grant Plaintiff's motion to amend his constitutional claims against the Aramark Defendants and will deny the motion as to Plaintiff's civil conspiracy claims against the Aramark and County Defendants.

## II. BACKGROUND

### A. Facts

The background of this case has been discussed at length in previous opinions, which is incorporated herein. See White v. Taylor, No. 10-5485, 2013 WL 1412300, at *1-*2 (D.N.J. Apr. 5, 2013), ECF No. 40; Cook v. Taylor, No. 10-2643, 2012 WL 4959519, at *1-*2 (D.N.J. Oct. 16, 2012). Plaintiff was confined at CCCF from December 2008 through April 2010. (Am. Compl. [Docket Item 44-1] at 2.) His Proposed Amended Complaint states that he was a pretrial detainee. (Id. at 16.) Plaintiff alleges that the Aramark Defendants intentionally served inmates at CCCF meals that

3

differed from those listed on the menu and which failed to meet the U.S. Food and Drug Administration's nutritional daily standards because the portions were so small. (Id. at 10-11.) Further, Plaintiff contends that meals were served on food trays in an unsanitary manner. (Id. at 14.)

Plaintiff provides examples of how meals served to the inmates differed from meals listed on the menus.[1] For example, the lunch that was served to inmates on November 25, 2009, consisted of two hotdogs and buns, one-quarter cup of plain cabbage without dressing, and three teaspoons of beans. (Id. at 11.) Plaintiff contends that according to the listed menu, inmates should have been served two hotdogs and buns, one-half cup of coleslaw, one-half cup of salad with low-fat dressing, three-quarters of a cup of ranch beans, and one-half cup of vanilla pudding. (Id.)

Additionally, Plaintiff contends that lunch on December 1, 2009, consisted of two slices of bread, two teaspoons of turkey in barbecue sauce ("mostly sauce [with] very little meat"), two teaspoons of mashed potatoes, one teaspoon of shredded cabbage with mayonnaise, and a Nutri-Grain cereal bar. (Id.) Plaintiff contends the menu was listed as three ounces of barbecue turkey meat, two slices

---

[1] Plaintiff provides a comparison of actual and listed menus for six meals: breakfast, lunch, and dinner on November 5, 2009, and December 1, 2009. (Id. at 11-12.)

4

of bread, one cup of potatoes, one-half cup of salad with low-fat dressing, and a slice of cake. (Id. at 12.)

Plaintiff adds that these substituted meals are not "isolated incidents" but instead are examples of what was served on a daily basis. (Id.) Specifically, Plaintiff alleges that whenever the menu listed either a cup or half cup of a food item, the Aramark Defendants would "significantly reduce the portion actually served to two or three teaspoons, and deny straving [sic] inmates." (Id.) For instance, Plaintiff alleges that when the menu called for a half-cup of oatmeal, he received only three teaspoons; a half-cup of scrambled eggs became two teaspoons; one cup of rice and beans was reduced to three teaspoons. (Id. at 11-12.)

Plaintiff asserts that when inmates complained about the smaller portion sizes, they were told "that's why there is commissary" and "buy some[thing from the] commissary." (Id. at 13.) Warden Taylor and deputy wardens also "instructed the inmates to purchase food from the jail's commissary." (Id. at 14.) Plaintiff contends that the commissary charges "exorbant [sic] prices which not all inmates can afford." (Id.) For example, Plaintiff states that the manufacturer's suggested retail price for "Ramen Soup" is 20 cents each, but CCCF charges $1.00 each. (Id.)

5

Additionally, a box of "Saltine Crackers," which contains four sleeves, would normally cost $1.23; however, CCCF sells one individual sleeve of crackers for 75 cents each. (Id.)

Plaintiff also contends that meals were served on food trays that contained "cracks, in which stagnat [sic] water collects and harbors bacteria, and emits a very foul odor," thereby contaminating the food served on the tray. (Id.) Plaintiff adds that the meal trays are distributed to inmates in such a way that "dirt, hair, dust, and other foreign objects" end up on the trays. (Id.) As evidence of the lack of sanitation, Plaintiff alleges that trays and cups often contain remnants of dried food from previous meals. (Id. at 15.)

Plaintiff asserts that he suffered from "starvation, significant weight loss; depression; fatigue; unrelenting and painful stomach cramps; excessive gas; [and] strained bowel movements and constipation" as a result of the inadequate food portions. (Id. at 13.) In addition, Plaintiff also alleges that the contamination from the food trays has led him to suffer "several bouts of uncontrolable [sic] viomiting [sic] at least 2 to 3 times per month, throughout his period of confinement at the CCCF." (Id. at 15.)

**B. Procedural History**

Plaintiff and many other detainees and inmates brought virtually identical suits complaining of the general conditions at CCCF, as well as the unsanitary meal presentation and inadequate nutrition. Although the Court dismissed claims against the Aramark Defendants in all of the other cases, the Court never dismissed Plaintiff White's case because, before the Court decided the motion, the Court terminated his case without prejudice for failure to comply with L. Civ. R. 10.1(a).[2] [Docket Item 24.] See Simmons v. Taylor, No. 10-1192, 2012 WL 3863792, at *4 (D.N.J. Sept. 5, 2012) (dismissing claims); Cook, 2012 WL 4959519, at *2 (same); Kunst v. Taylor, No. 10-1608, 2012 WL 5451275, at *3 (D.N.J. Nov. 5, 2012) (same).

In January 2013, the Court granted Plaintiff's motion to reopen his case and reinstated the Aramark Defendants' motion to dismiss. [Docket Items 14 & 30.] Plaintiff filed opposition to the motion to dismiss [Docket Item 34] and moved to amend the Complaint. [Docket Item 35.] The Court denied Plaintiff's motion to amend without prejudice, as he failed to attach a proposed amended complaint. White, 2013

---

[2] L. Civ. R. 10.1(a) requires parties to advise the Court of any change of address within seven days of such a change. In this case, court mail sent to Plaintiff was returned as undeliverable from July 2011 to May 2012. (See Docket Items 13, 21, & 25 (documenting undeliverable mail).)

7

WL 1412300, at *8. Plaintiff refiled the present motion to amend, attaching a Proposed Amended Complaint.

**C. Parties' Arguments**

The Aramark Defendants contend that even with the proposed amendments, Plaintiff still has failed to establish a valid cause of action under the Fourteenth Amendment, as his allegation "that certain foods were switched with other foods does not warrant a finding that the deprivation was 'sufficiently serious.'" (Aramark Defs. Br. [Docket Item 48] at 9.) They contend that "plaintiff is alleging minor deviations from the menu that do not rise to a constitutional violation," and "Plaintiff still received as alleged a balanced meal . . . ." (Id.) They analogize the present case to the unpublished decision in Mora v. Camden Cnty., No. 09-4183, 2010 WL 2560680, at *3 (D.N.J. June 21, 2010), in which the plaintiff alleged that he received inadequate calories and suffered "diminished mental and physical faculties."[3] (Aramark Defs. Br. at 7-9.)

---

[3] In Mora, however, the Court dismissed the Complaint without prejudice to the filing of an amended complaint, because the plaintiff did not describe the diet, the dates of confinement, or plead facts showing how long he allegedly suffered malnutrition. Id. at *9. This case is distinguishable because Plaintiff makes factual allegations about his diet, the dates of his confinement and how long he allegedly suffered malnutrition.

8

The Aramark Defendants request that the motion to amend be denied as to the conspiracy claim.[4] (Id. at 9.)

The County Defendants oppose Plaintiff's motion to amend, referencing the Court's April 5, 2013 Order which only permitted amendments pertaining to the Aramark Defendants. (County Defs. Br. at 1.) Addressing the merits of the conspiracy claim, the County Defendants contend that permitting amendment would prejudice them due to delay. (Id. at 4.) They add that Plaintiff's amendment would be futile, as his vague allegations of conspiracy fail to meet the prevailing pleading standard. (Id. at 5.)

## III. ANALYSIS

### A. Standard of Review

Under Fed. R. Civ. P. 15(a)(2), a party may amend its pleading with the court's leave, and "[t]he court should freely give leave when justice so requires." However, the Third Circuit has recognized that a district court justifiably may deny leave to amend on grounds "such as undue delay, bad faith, dilatory motive, prejudice and futility." Calif. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 165 (3d Cir. 2004). An amendment is futile where the complaint, as amended, would fail to state a

---

[4] The Aramark Defendants "adopt co-defendant County's arguments" in favor of denying the motion to amend the conspiracy claim. (Id. at 9.)

9

claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6). In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Furthermore, although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Plaintiff's Constitutional Claims Against the Aramark Defendants

Plaintiff has alleged plausible factual allegations in support of his constitutional claim against the Aramark Defendants. Accordingly, his motion to amend as to this claim will be granted. The Court has previously stated that when a pretrial detainee such as Plaintiff raises a Fourteenth Amendment challenge, the Court looks to the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of confinement complained of amounted to punishment prior to the adjudication of guilt. See Simmons, 2012 WL 3863792, at *3; Acevedo v. CFG Health Sys. Staff, Civ. No. 10-5103, 2010 WL 4703774, at *4

(D.N.J. Nov. 12, 2010); Mora, 2010 WL 2560680, at *7.[5]

The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law. See Bell, 441 U.S. at 535. The Third Circuit summarized the conditions of confinement standard under Bell as follows:

> [A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.

Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (citation and internal quotation marks omitted).

Thus, the Third Circuit has "distilled the Supreme Court's teachings in Bell into a two-part test. We must

---

[5] As the Court discussed recently in Hargis v. Aramark Corr. Serv., LLC, No. 10-1006, 2013 WL 3465189, at *7-*8 (D.N.J. July 10, 2013), the "standard to apply when evaluating conditions of confinement imposed on pretrial detainees is not clear and has been the subject of recent scholarly debate." As the Court did in Hargis, here the Court will apply the standard articulated in Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008), discussed infra, which represents the minimum constitutional protections afforded to pretrial detainees. See id. at *8. Plaintiff makes no allegation here that he was not afforded a probable cause hearing, and thus this case does not implicate some of the more controversial aspects of the Eighth and Fourteenth Amendment doctrine. See generally Catherine T. Struve, The Conditions of Pretrial Detention, 161 U. Pa. L. Rev. 1009 (2013).

11

ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) (citation and internal quotation marks omitted). Moreover, the Fourteenth Amendment standard of unconstitutional punishment contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298, 111 S.Ct. 2321. The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson, 495 F.3d at 68.

Under the Due Process Clause, prison officials must satisfy inmates' "basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993). The Constitution requires "that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of

the inmates who consume it' [and] under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983). "[A] prisoner's diet must provide adequate nutrition, but prison officials cannot be held liable under the [constitutional standard] unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." Mays v. Springborn, 575 F.3d 643, 648 (7th Cir. 2009) (citation omitted); see also Duran v. Merline, --- F. Supp. 2d ---, No. 07-3589, 2013 WL 504582, at *9 (D.N.J. Feb. 8, 2013) (citing Robles and Springborn).

While the allegations set forth in Plaintiff's Proposed Amended Complaint do not explicitly state what the nutritional daily standards are, or the caloric intake of the meals actually served, accepting all factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has stated a claim for a violation of the Fourteenth Amendment. Plaintiff alleges that the food he was provided on two representative days contained significantly smaller portion sizes than promised. Some meals allegedly consisted of no more than two slices of bread and a few teaspoons of

meat, potatoes, or other food. (Am. Compl. at 11-12.) Although the parties are silent as to the caloric or nutritional value as to the meals actually served,[6] the Court will infer at this stage that the meals as described fell below the acceptable standard.

In addition, Plaintiff pleads that he suffered significant weight loss, depression, fatigue, stomach cramps, gas, constipation, and uncontrollable vomiting as a result of the Aramark Defendants' food service. These allegations permit the inference that the food service presented an immediate danger to the health and well being of the inmates and detainees. Although Plaintiff does not plead facts that directly demonstrate a culpable state of mind on the part of the Aramark Defendants, the Third Circuit permits an inference of mens rea when the restriction is arbitrary, purposeless or excessive. Stevenson, 495 F.3d at 68. As pleaded, Plaintiff's allegations appear arbitrary, purposeless and excessive, and therefore culpability may be inferred.

Because the Court cannot and must not assess the credibility of the claims alleged, but merely assess whether the pleadings state a claim that is plausible on

---

[6] The Aramark Defendants maintain that Plaintiff received "as alleged a balanced meal." (Aramark Defs. Br. at 9.)

its face, the Court will grant Plaintiff's motion to amend as to the constitutional violation against the Aramark Defendants. Whether the diet served to Plaintiff as a pretrial detainee failed to meet the minimum requirements of a non-harmful diet is a question of fact on which Plaintiff will have the burden of proof. The Court cannot say that Plaintiff's claim of a harmfully inadequate diet fails as a matter of law at this stage, given the allegations in the amended complaint of weight loss and sickness on a recurring basis. As the Court has stressed repeatedly in these related cases, the concern is not the mere substitution of one food item for another but rather the allegation of a nutritionally deficient diet that, over time, caused actual harm to Plaintiff. <u>See, e.g.</u>, <u>Simmons</u>, 2012 WL 3863792, at *4 ("the alleged deviations from the menu . . . do not raise a plausible inference that Defendants caused Plaintiff to suffer from malnutrition"). Plaintiff's amended complaint makes such allegations and will not be dismissed at this stage.

### C. Plaintiff's Conspiracy Claim Against the Aramark Defendants

Plaintiff's motion to amend regarding his conspiracy claim against the Aramark Defendants will be denied, as he fails to plead sufficient facts to support such an

allegation. In order to state a claim for civil conspiracy in New Jersey, a Plaintiff must provide facts which allege

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

Warren v. Fisher, No. 10-5343, 2011 WL 4073753, at *3 (D.N.J. Sept. 12, 2011) (quoting Banco Popular N. Am. v. Gandi, 876 A.2d 253, 263 (N.J. 2005)). Thus, to state a claim for civil conspiracy, the plaintiff must allege that the defendant (1) entered into an agreement with at least one other person, (2) for the purpose of committing an unlawful act, and (3) one of the conspirators then took at least one overt act in furtherance of the agreement, and (4) plaintiff suffered some damage as a result. Gandi, 876 A.2d at 263.

In this case, Plaintiff does not allege facts supporting the first element of a civil conspiracy claim. Plaintiff provides no factual allegations that the Aramark Defendants entered into an agreement with one another to treat the inmates in such a fashion. Plaintiff instead recites the elements of claim in conclusory language: "defendants agreed to act in concert to deprive CCCF inmates of their essential daily carolic [sic] and

nutritional requirements, and forcing inmates to utilize the jail's commissary in an attempt to satisfy their nutritional needs." (Am. Compl. at 19.)

Since "[t]he assumption of truth does not apply. . . . to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" Warren, 2011 WL 4073753, at *3 (quoting Iqbal, 556 U.S. at 677), Plaintiff's claims would not survive a motion to dismiss. As such, Plaintiff's motion to amend as to the civil conspiracy claim against the Aramark Defendants will be denied.

### D. Plaintiff's Conspiracy Claim Against the County Defendants

Plaintiff's conspiracy claim against the County Defendants is deficient for the same reasons. Specifically, Plaintiff failed to allege facts demonstrating whether or how the County Defendants entered into an agreement to serve insufficient meal portions to Plaintiff and other detainees, leaving him and others no option but to shop at the jail's commissary. Accordingly, the Court will deny Plaintiff's motion to amend as to the civil conspiracy claim against the County Defendants, as amendment would be futile.

**IV. CONCLUSION**

Plaintiff's motion to amend is granted as to his Fourteenth Amendment claim against the Aramark Defendants. Plaintiff's motion to amend is denied as to the conspiracy claims against the Aramark and County Defendants. An accompanying Order will be entered.

 August 28, 2013                       s/ Jerome B. Simandle  
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge