IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KASHIEF WHITE, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| | Civil No. 10-5485 (JBS/AMD) |
| v. | |
| ERIC TAYLOR, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Mr. Kashief White
116 Blackwood Clementon Rd.
Apt. G-304
Clemonton, NJ 08021
        Plaintiff Pro Se

Matthew J. Behr, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
        Attorney for Defendants Aramark, Inc., Aramark Correctional
        Services, LLC, and Dietician Carey

Anne E. Walters, Esq.
Office of County Counsel
Courthouse, 14th Floor
520 Market Street
Camden, NJ 08102
        Attorney for Defendants Warden Eric Taylor, Deputy Warden
        Christopher Fossler, Deputy Warden Anthony Pizzaro, Rodney
        Greco, Camden County and Camden County Freeholders

**SIMANDLE**, Chief Judge:

## I.  Introduction

This matter is before the Court on two motions for summary judgment brought by the Camden County Defendants[1] [Docket Item 66] and the Aramark Defendants (collectively, "Aramark")[2] [Docket Item 68]. The motions are unopposed.

This action, brought by Plaintiff Kashief White, pro se, concerns conditions of confinement in the Camden County Correctional Facility ("CCCF") in Camden, N.J., and the nutritional sufficiency of meals that the Aramark Defendants served to Plaintiff while he was a pretrial detainee there from 2008 to 2010. Plaintiff alleges that CCCF was overcrowded and understaffed, unsanitary and unsafe. He alleges that the County was deliberately indifferent to the rights of the detainees and the County instituted or acquiesced to policies or practices in violation of his Fourteenth Amendment rights and rights secured by the New Jersey Constitution and other state law. He also alleges that the Aramark Defendants served meals in an unsanitary fashion and failed to provide him with an adequate

_____

[1] The Camden County Defendants include Camden County, Warden Eric Taylor, Deputy Warden Christopher Fossler, Deputy Warden Anthony Pizzaro, Rodney Greco, and the Camden County Freeholders.

[2] The Aramark Defendants include Aramark, Inc., Aramark Correctional Services, LLC, and Dietician Carey.

diet, thereby violating his Due Process rights under the Fourteenth Amendment.

The two groups of Defendants separately move for summary judgment on several grounds. Of primary importance, Defendants argue that Plaintiff fails to allege or provide evidentiary support for injuries he sustained as a result of the complained-of conduct. For the reasons explained below, the Court will grant both motions.

## II. Background

### A. Facts[3]

The background of this case has been discussed at length in previous opinions, which are incorporated herein. See White v. Taylor, No. 10-5485, 2013 WL 4595885, at *1-*2 (D.N.J. Aug. 28, 2013), ECF No. 54; White v. Taylor, No. 10-5485, 2013 WL 1412300, at *1-*2 (D.N.J. Apr. 5, 2013), ECF No. 40; Cook v. Taylor, No. 10-2643, 2012 WL 4959519, at *1-*2 (D.N.J. Oct. 16, 2012).

---

[3] These motions are unopposed. Twice the Court warned Plaintiff that if he did not file opposition, all factual assertions in the motions would be deemed admitted, and twice the Court granted Plaintiff extensions of time in which to file. [Docket Items 71 & 73.] Those deadlines for opposition expired two weeks ago. Because Plaintiff does not oppose these motions, all factual assertions contained in the motions for summary judgment are deemed admitted. The Court will refer to these facts as undisputed.

Plaintiff was confined at CCCF at least from December 2008 through April 2010 as a pretrial detainee.[4] (Plaintiff's Answers to First Set of Interrogatories (County Ex. C) ¶ 8 [Docket Item 66-3]; Aramark Ex. A [Docket Item 68-6].) Upon admission to the CCCF, all inmates at the CCCF are issued an "Inmate Handbook" that includes a section on inmate grievances detailing the procedures to be followed. (Certification of Albert Hickson, Jr. ¶ 3 (County Ex. F) [Docket Item 66-6].) Plaintiff filed no grievances while he was incarcerated at the CCCF. (Hickson Certification ¶ 4.)

In his Amended Complaint, Plaintiff asserts that (1) overcrowding forced him to sleep on the floor next to the toilet (Am. Compl. [Docket Item 44-1] at 9-10); (2) he has been exposed to boils and contagious diseases due to inadequate cleaning supplies and failure to isolate contagious inmates (id. at 10, 16); (3) inmates wait days or weeks to receive medical treatment due to insufficient medical staff (id. at 10); (4) the facility co-mingles convicted inmates and pretrial detainees (id. at 16);

---

[4] There is some disagreement about the dates of Plaintiff's confinement. His answer to interrogatories states that he was confined from April 2008 through October 2010. (County Ex. C. ¶ 8) His most recent Amended Complaint, filed after he answered interrogatories, states that he was confined from December 2008 to April 9, 2010. (Am. Compl. [Docket Item 63] at 5.) A certification of a CCCF corrections officer states that Plaintiff was incarcerated from May 2008 to April 2010. (County Ex. F [Docket Item 66-6] ¶ 4.)

(5) his cell reached temperatures exceeding 90 degrees and his sink was running and clogged (id. at 15-16.). He asserts: "plaintiff has suffered serious emotional and physical injuries, and has suffered real and measurable monetary damages," but he does not specify the injury or provide any additional factual detail about the harm suffered. (Id. at 17.)

Plaintiff also alleges that the meals he was served were different from the listed menu and the portions were nutritionally deficient. (Id. at 11-12.) He asserts, for instance, that breakfast consisted of two teaspoons of scrambled eggs, three teaspoons of oatmeal, and two slices of bread. (Id. at 11.) He alleges that dinner the same day consisted of three carrot sticks (the "size of a french fry"), three teaspoons of beans and rice, and two slices of bread. (Id.) He alleges that he "suffered starvation, significant weight loss; depression; fatigue; unrelenting and painful stomach cramps; excessive gas; strained bowel movements and constipation . . . ." (Id. at 13.) Plaintiff also alleges that the contamination from unclean food trays has led him to suffer "several bouts of uncontrolable [sic] viomiting [sic] at least 2 to 3 times per month, throughout his period of confinement at the CCCF." (Id. at 15.)

## B. Procedural history

Plaintiff and many other detainees and inmates brought virtually identical suits complaining of the general conditions

at CCCF, as well as the unsanitary meal presentation and inadequate nutrition. See Cook, 2012 WL 4959519, at *1. The cases were consolidated for a time, but eventually de-consolidated because the Court was unable to locate pro bono counsel willing to accept appointments to represent the plaintiffs. [Docket Item 12.] After de-consolidation, the Aramark Defendants filed a motion to dismiss on March 6, 2012 [Docket Item 14], which Plaintiff did not oppose. The Court dismissed claims against the Aramark Defendants in all cases except Plaintiff's, because before the Court decided the motion, the Court terminated Plaintiff's case without prejudice for failure to comply with L. Civ. R. 10.1(a).[5] [Docket Item 24.] See Simmons v. Taylor, No. 10-1192, 2012 WL 3863792, at *4 (D.N.J. Sept. 5, 2012) (dismissing claims); Cook, 2012 WL 4959519, at *2 (same); Kunst v. Taylor, No. 10-1608, 2012 WL 5451275, at *3 (D.N.J. Nov. 5, 2012) (same).

Plaintiff reemerged six weeks later to file a notice of change of address. [Docket Item 26.] Six months after that, Plaintiff moved to reopen his case. [Docket Item 28.] Over Aramark's objection, the Court reopened Plaintiff's case and

---

[5] L. Civ. R. 10.1(a) requires parties to advise the Court of any change of address within seven days of such a change. In this case, mail sent to Plaintiff by the Court was returned as undeliverable from July 2011 to May 2012. (See Docket Items 13, 21, & 25 (documenting undeliverable mail).)

reinstated Aramark's motion to dismiss. [Docket Items 14 & 30.] Plaintiff simultaneously filed opposition and an incomplete motion to amend the Complaint. [Docket Item 35.] After permitting Plaintiff to refile, the Court granted the motion to amend as to Plaintiff's Fourteenth Amendment Due Process Clause claim against the Aramark Defendants, because Plaintiff alleged that the small meal portions did not provide him adequate nutrition and resulted in physical injuries, White, 2013 WL 4595885, at *5, but the Court denied Plaintiff's motion to add a conspiracy claim against both the Aramark Defendants and the County Defendants. Id. at *5-*6.

By letter on January 23, 2014, Matthew J. Behr, Esq., counsel for Aramark, notified the Court that he was having difficulty communicating with Plaintiff, that Plaintiff was not answering Defendants' discovery requests, and that legal correspondence sent to Plaintiff was returned as undeliverable. [Docket Item 61.] The Court mailed a letter to Plaintiff requesting that he to explain why he had not answered Defendants' requests and why he did not update his address with the Court. [Docket Item 62.] Plaintiff never responded to the Court's letter but, approximately one week later and approximately five months after the Court granted in part his previous motion to amend, filed a new motion to amend his Complaint.

The Court denied Plaintiff's motion to amend on the grounds of undue delay, prejudice to Defendants, and futility. [Docket Item 69.] In a separate Order, the Court sua sponte granted Plaintiff two additional weeks to file opposition, despite the fact that Plaintiff's opposition papers were six and eight weeks overdue. [Docket Item 71.] The Court warned of the consequences of failing to file opposition: "the motions will be deemed unopposed and all factual assertions by Defendants will be deemed admitted." [Id.]

Plaintiff did not file opposition, but one day after the two-week extension expired, the Court received a letter from Plaintiff saying he was unaware that any motions had been filed. [Docket Item 72.] The Court observed that the Scheduling Order entered on November 19, 2013, put Plaintiff on notice that summary judgment motions would be due by February 7, 2014, and warned Plaintiff "that if he desires to litigate this case, he must adhere to Court deadlines and Orders and must remain aware of developments in his case." [Id. at 3.] The Court also observed that Plaintiff, upon receiving the Court's Order granting him an extension to file, could have sought copies of the motion from the Clerk of Court. [Id. at 4.] Nevertheless, the Court provided Plaintiff with copies of the motions and granted Plaintiff an additional two weeks to file opposition, again warning that if he failed to file opposition, the motions

would be deemed unopposed and all factual assertions by Defendants would be admitted. [Id.]

Plaintiff never filed opposition.

In its current form, Plaintiff's Amended Complaint contains the following causes of action: (1) violations of the Fourteenth Amendment against the Aramark Defendants; (2) violations of Due Process rights against the Aramark Defendants under the New Jersey Constitution, the New Jersey Administrative Code, and the New Jersey Tort Claims Act; (3) violations of the Fourteenth Amendment against the individual County Defendants, pursuant to 42 U.S.C. § 1983; and (4) violations of the Fourteenth Amendment against the County, pursuant to 42 U.S.C. § 1983.

## III. Standard of Review

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "If a party fails to properly support an assertion of fact . . . , the court may . .

. grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(3).

A party opposing summary judgment must adduce evidence, such as an affidavit from a competent witness or authentic documents, that would be admissible if the case were tried, and that party cannot rest on his complaint or mere allegations in briefs, for pleadings and briefs are not admissible evidence. See Fed. R. Civ. P. 56(c)(1)-(4); Lamont v. N.J., 637 F.3d 177, 182 (3d Cir. 2011) (reaffirming that a party opposing summary judgment "must point to evidence -- whether direct or circumstantial -- that creates a genuine issue of material fact, and may not rely simply on the assertion that a reasonable jury could discredit the opponents' account") (quotation marks and alterations omitted); Devito v. Zucker, Goldberg & Ackmerman, LLC, 908 F. Supp. 2d 564, 572 (D.N.J. 2012) (stating that the nonmovant "may not rest upon the mere allegations, speculation, unsupported assertions or denials of its pleadings") (citing Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001)); AstraZaneca Pharm. LP v. Teva Pharm. USA, 567 F. Supp. 2d 683, 691 (D.N.J. 2008) ("the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact") (citing Celotex Corp., 477 U.S. at 323).

**IV. Motion for Summary Judgment by the County Defendants**

The Court is "required to raise issues of standing <u>sua sponte</u> if such issues exist." <u>Addiction Specialists, Inc. v. Twp. of Hampton</u>, 411 F.3d 399, 405 (3d Cir. 2005). Here, Plaintiff seeks a "[d]eclaratory judgment that all defendants violated plaintiff's 14th amendment rights." (Am. Compl. at 21.) However, Plaintiff is no longer incarcerated at CCCF. [Docket Item 1 at 1.] Claims for declaratory relief by prisoner-plaintiffs are rendered moot when the plaintiffs are no longer confined in the complained-of facility. See <u>Johnson v. Wenerowicz</u>, 440 F. App'x 60, 62 (3d Cir. 2011) ("Johnson's requests for injunctive and declaratory relief against the named DOC defendants were rendered moot by his transfer") (citing <u>Sutton v. Rasheed</u>, 323 F.3d 236, 248 (3d Cir. 2003), <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975), and <u>Abdul-Akbar v. Watson</u>, 4 F.3d 195, 206 (3d Cir. 1993)). Accordingly, the County is entitled to summary judgment to the extent Plaintiff's claims seek declaratory relief, because Plaintiff lacks standing to bring those claims.

Plaintiff also lacks Article III standing for most of his confinement claims because he does not allege, let alone make a showing with admissible evidence of, "an injury in fact that is . . . actual or imminent, not conjectural or hypothetical." <u>Edmonson v. Lincoln Nat'l Life Ins. Co.</u>, 725 F.3d 406, 425 (3d

Cir. 2013) (ellipsis in original); In re Franklin Mut. Funds Fee
Litig., 388 F. Supp. 2d 451, 460-61 (D.N.J. 2005) (holding that
a plaintiff "can bring suit against a party only if the
plaintiff personally suffered an injury and that injury is
traceable to that party"). The County argues that summary
judgment is appropriate because Plaintiff fails to provide
evidence of any injury. (See County Mot. at 9 ("Plaintiff has
failed to provide any evidence to support his claims of unsafe
and unhealthy prison conditions, or that he suffered any damages
as a result of the alleged conditions.").)

 Plaintiff pleads that he was forced to sleep on the floor
on a thin mattress, but does not allege any resulting injury.
(Am. Compl. at 9-10.) He alleges that the CCCF provided
inadequate cleaning supplies, and he claims that he "has been
exposed to boils as an outbreak has occurred on his living
housing unit," but he does not allege that he contracted any
disease or was harmed by this condition. (Id. at 10). He pleads
that an inadequate medical staff forces inmates to wait days or
weeks before receiving treatment, but does not allege that he
waited days or weeks to receive treatment, or that he was
injured by any delay due to inadequate staffing. (Id.) He also
claims that understaffing of the maintenance crew resulted in
delayed responses to "clogged toilets, heat, air conditioning,
and other malfunctions," but does not specify an associated

injury. (Id. at 15.) Plaintiff alleges that the CCCF failed to isolate inmates with contagious diseases, and that he was exposed to highly contagious diseases on a daily basis, but does not allege an injury or that he contracted any disease as a result of the failure to isolate inmates. (Id. at 16.) Finally, Plaintiff alleges that he, as a pretrial detainee, was housed with convicted prisoners, but alleges no resulting injury. (Id. at 16.) Plaintiff asserts, without elaboration, that he "has suffered serious emotional and physical injuries, and has suffered real and measurable monetary damages." (Id. at 17.) Plaintiff has not presented any evidence of any of his claims, as he failed to oppose the motion for summary judgment.

Plaintiff's allegations are not sufficient to maintain this suit, because the lack of an alleged injury-in-fact deprives Plaintiff of Article III standing to bring these claims. Moreover, "vague and indefinite allegations are inadequate to establish injury-in-fact . . . ." Pa. Dep't of Pub. Welfare v. Sebelius, 674 F.3d 139, 156 (3d Cir. 2012). Plaintiff's bald assertion that he "suffered serious emotional and physical injuries," without any evidence supporting this claim, is insufficient to create a genuine issue of material fact as to whether he sustained an injury and insufficient to preclude the

13

entry of summary judgment. Therefore, the Court will grant the County's motion for summary judgment on Counts III and IV.[6]

## VI. Motion for Summary Judgment by the Aramark Defendants

### A. Plaintiff lacks standing for declaratory relief against the Aramark Defendants

For the reasons explained _supra_, Part V, the Aramark Defendants are entitled to summary judgment on Plaintiff's claims seeking declaratory relief, because Plaintiff is no longer incarcerated and lacks standing.

Plaintiff does have Article III standing to bring claims for money damages against the Aramark Defendants because he alleges physical injuries resulting from his inadequate diet and unsanitary meal service. (_See_ Am. Compl. at 13 ("plaintiff suffered starvation, significant weight loss; depression; fatigue; unrelenting and painful stomach cramps; excessive gas; strained bowel movements and constipation"); _id._ at 15 ("several bouts of uncontrolable [sic] viomiting [sic] at least 2 to 3 times per month").) Accordingly, the Court will consider the substance of Plaintiff's claims and the Aramark Defendants' arguments in favor of its unopposed motion for summary judgment.

### B. Plaintiff fails to prove constitutional injuries

---

[6] The Court need not address the County's other arguments in favor of summary judgment.

Plaintiff alleges that the Aramark Defendants violated his Fourteenth Amendment due process rights when they failed to provide a nutritionally adequately diet and provided meals in an unsanitary manner. (Am. Compl. at 17-18.) His brings this claim pursuant to 42 U.S.C. § 1983.

In the Court's previous opinion addressing the nearly identical cases brought by other detainees at the CCCF, the Court recited the governing legal standard for Fourteenth Amendment claims by pretrial detainees:

> The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law. See Bell v. Wolfish, 441 U.S. at 535. The Third Circuit summarized the conditions of confinement standard under Bell as follows:
>
> > [A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate nonpunitive government purpose, or when the restriction is excessive in light of that purpose.
>
> Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (citation and internal quotation marks omitted).
>
> Thus, the Third Circuit has "distilled the Supreme Court's teachings in Bell into a two-part test. We must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) (citation and internal quotation marks omitted). Moreover, the Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard,

contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . . The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

> Stevenson, 495 F.3d at 68.

Cook, 2012 WL 4959519, at *4-*5.

The Aramark Defendants argue that Plaintiff has failed to provide evidentiary support for his claims and to substantiate his physical injuries. (Aramark Mot. [Docket Item 68-5] at 9-10.) Citing Nickles v. Taylor, No. 9-313, 2010 WL 1949447, at *3 (D.N.J. May 14, 2010), Aramark argues that "[c]onclusory allegations without evidence is not sufficient to support the allegations." (Aramark Mot. at 9.) Aramark asserts that "plaintiff did not have any health problems," as documented on a "Confidential Medical Record for Inmate Transfers." (Id. at 10; Aramark Ex. D.) The form, which appears to have been completed

16

in April 2009,[7] indicates that Plaintiff was not taking medication; that he was not undergoing any treatment; that he had no mental health problems; that he did not wear dentures or partials and was not undergoing dental care; and that he had no allergies, among other information. (Aramark Ex. D.) The section of the form describing Plaintiff's "Conditions" is blank, permitting the inference that Plaintiff did not complain of any medical problems at the time.[8] (Id.) Plaintiff has offered no argument in response.

Plaintiff's transfer form is the only evidence of Plaintiff's medical condition in the record. It provides support for Aramark's unchallenged assertion that Plaintiff did not have any health problems as a result of his diet, at least several months into his detainment at the CCCF. The Court has provided Plaintiff extra time and opportunity to respond to this motion for summary judgment and warned about the consequences of failing to file opposition. The Court will deem Aramark's assertion that Plaintiff did not have any health problems as

---

[7] The form lists the inmate transfer date as April 9, 2009. (Aramark Ex. D.) The medical personnel completing the form signed and dated the form on April 8, 2009. (Id.) However, the form also lists that Plaintiff had a "PPD Test" on November 30, 2009, more than seven months after the date on the signature line. (Id.)

[8] As stated above, it is undisputed that Plaintiff did not file any grievances during his detention at CCCF.

admitted. Therefore, Plaintiff fails to satisfy the objective component of the due process inquiry, as he has no evidence of a sufficiently serious deprivation. His allegations, while serious on their face, have not been substantiated by any testimonial or documentary evidence, and he bears the burden at trial of proving his allegations. Accordingly, the Court will grant Aramark's motion for summary judgment on the Fourteenth Amendment claim.

Plaintiff also purports to bring a claim under the New Jersey Constitution. Aramark reasonably construes this claim as asserting a violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1, et seq. Courts have consistently analyzed the NJCRA "nearly identically to Section 1983." Endl v. N.J., --- F. Supp. 2d. ---, No. 12-3564, 2014 WL 1050738, at *5 (D.N.J. Mar. 13, 2014); see also Gonzalez v. Auto Mall 46, Inc., Nos. L-2412-09 & L-216-10, 2012 WL 2505733, at *4 (N.J. Super. Ct. App. Div. July 2, 2012), cert. denied, 213 N.J. 530 (2013). Accordingly, for the reasons that Plaintiff's Fourteenth Amendment claim fails, his claim under the New Jersey Constitution also fails.

## C. Plaintiff cannot maintain a claim under the New Jersey Administrative Code 10A:4-3.1

Plaintiff claims that his conditions of confinement violate N.J.A.C. 10A:4-3.1. The provision notifies inmates of their

rights and responsibilities, including, for instance "nutritious meals, proper bedding and clothing, a laundry schedule for cleanliness of same, an opportunity to shower regularly, sufficient warmth, proper ventilation . . . ." N.J.A.C. 10:A4-3.1(a)(4).

Aramark argues that this particular "Administrative Code provision does not provide for a private cause of action. Plaintiff has set forth this cause of action through the Fourteenth Amendment and the New Jersey Constitution. Therefore, this claim must be dismissed." (Aramark Mot. at 12.) Aramark provides no legal support for its position. New Jersey courts and at least one court in this District have entertained claims under N.J.A.C. 10A:4-3.1. See Allah v. Hayman, No. 08-1177, 2011 WL 1322186, at *4 (D.N.J. Apr. 1, 2011) (dismissing the claim for lack of sufficient factual allegations), appeal dismissed as frivolous, 422 F. App'x 632 (3d Cir. 2011); Bryant v. Dep't of Corr., 2006 WL 59819, (N.J. Super. Ct. App. Div. Jan. 12, 2006) (rejecting the petitioner's appeal under N.J.A.C. 10A:4-3.1(a) based on the substantive record). Without the benefit of any briefing on the issue, the Court declines to rule that a private right of action to enforce N.J.A.C. 10A:4-3.1 does not exist.

Assuming without deciding that a private right of action does exist, Aramark is still entitled to summary judgment. As discussed above, the Amended Complaint alleges that Plaintiff

suffered physical injuries from his inadequate diet and unsanitary food service, but the only medical evidence in the record refutes that claim, and Aramark's contention that Plaintiff suffered no physical harm as a result of his diet is undisputed. Therefore, Plaintiff cannot maintain a claim under N.J.A.C. 10A:4-3.1, and the Court will grant summary judgment in favor of Aramark.

### D. Aramark is entitled to summary judgment on the New Jersey Tort Claims Act claim

Plaintiff alleges that Aramark's conduct is actionable under the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:1-1, et seq. (Am Compl. at 18.) The TCA provides that a "public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a). The act defines "public entity" as "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. The term "public employee" means "an employee of a public entity," but the word "employee" specifically excludes an independent contractor. Id. The act defines "injury" as "death, injury to a person, damage to or loss of property or

any other injury that a person may suffer that would actionable if inflicted by a private person." Id.

Aramark argues that (1) the TCA is not a separate cause of action and Plaintiff fails to allege underlying tort claims against Aramark; (2) the TCA is inapplicable because Aramark is not a public entity within the meaning of the statute; and (3) Plaintiff failed to provide a notice of claim under N.J.S.A. 59:8-8.[9] (Aramark Mot. at 12-15.)

Aramark is not a "State, . . . county, municipality, district, public authority, public agency, . . . [or] other political subdivision or public body in the State," and therefore is not a public entity within the meaning of the TCA. See N.J.S.A. 59:1-3; Vanchieri v. N.J. Sports & Exposition Auth., 104 N.J. 80, 85 (1986) (holding that a contractor responsible for providing permanent posts and guards to the state sports and exposition authority was not entitled to invoke the protections of the TCA because the contractor did not fit within the meaning of "public entity"). A party may qualify as state actor for purposes of § 1983, even if that party does not

---

[9] Aramark's contention that Plaintiff may not maintain an action under the TCA without establishing a permanent loss of a bodily function is without support. (Aramark Mot. at 15-16.) The provision quoted by Aramark, N.J.S.A. 59:9-2(d) plainly limits the award of special damages for "pain and suffering" to circumstances where a plaintiff sustained a permanent loss of a bodily function. However, that provision does not purport to limit the availability of any damages to those situations.

qualify as a public entity for purposes of the TCA. See Tice v. Cramer, 133 N.J. 347, 374-75 (1993) ("Whatever the congruency of the two kinds of claims may or may not be, we note their independence from each other.").

The conclusion that Aramark is not a public entity does not end the inquiry. Private companies are liable under ordinary tort principles. Here, however, Plaintiff has not articulated any common law tort claims that he pursues, nor does Plaintiff oppose Aramark's contention that Plaintiff does not bring any tort causes of action. (Aramark Mot. at 12.) Accordingly, Plaintiff cannot maintain any tort claims against Aramark.

Even if the Court assumed that Aramark qualified as a public entity under the TCA, Aramark would be entitled to summary judgment because Plaintiff does not plead or provide evidence of compliance with the notice of claim requirements of the TCA, N.J.S.A. 59:8-8,[10] and Plaintiff does not oppose Aramark's contention that Plaintiff failed to comply with that requirement. (Aramark Mot. at 13-14.) Moreover, as discussed above, Plaintiff does not meet his evidentiary burden of creating a genuine issue of material fact as to whether he sustained an injury as a result of his diet, and therefore

---

[10] "The claimant shall be forever barred from recovering against a public entity or public employee if: (a) The claimant failed to file the claim with the public entity within 90 days of accrual of the claim . . . ." N.J.S.A. 59:8-8(a).

Plaintiff cannot maintain an action under the TCA. <u>See</u> N.J.S.A. 59:2-2 (providing that a "public entity is liable for <u>injury</u> proximately caused by an act or omission of a public employee . . .") (emphasis added).

### E. Summary

For the reasons explained above, the Court will grant summary judgment in favor of Aramark on Counts I and II.

## VII. Conclusion

Given Plaintiff's failure to oppose the motions for summary judgment despite receiving multiple opportunities, and because the record supports the entry of summary judgment, the Court will grant both motions for summary judgment by the County Defendants and the Aramark Defendants. An accompanying Order will be entered.

__May 27, 2014__                              __s/ Jerome B. Simandle__
Date                                         JEROME B. SIMANDLE